PACIFIC ARCHITECTS AND ENGI-
NEERS INC., Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF
STATE; James A. Baker, III,* in his
capacity as Secretary of State, Defen-
dants–Appellees.

No. 89–55010.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1990.

Decided June 26, 1990.

Lester G. Ostrov, Fogel, Feldman, Os-
trov, Ringler & Klevens, Los Angeles, Cal.,
for plaintiff-appellant.

Peter R. Maier, U.S. Dept. of Justice,
Washington, D.C., for defendants-appel-
lees.

Before THOMPSON and TROTT,
Circuit Judges, and WEIGEL, District
Judge.**

DAVID R. THOMPSON, Circuit Judge:

This case presents a reverse Freedom of
Information Act question under 5 U.S.C.
§ 552 ("the FOIA").

Pacific Architects and Engineers Inc.
("PAE") seeks to prevent the State Depart-
ment from disclosing the amount of PAE's
hourly charges to the government under its
contract to provide maintenance and opera-

---

* James A. Baker, III has been substituted for his
predecessor, George P. Schultz, as Secretary of
State pursuant to Fed.R.App.P. 43(c)(1).

** Honorable Stanley A. Weigel, Senior United
States District Judge for the Northern District of
California, sitting by designation.

tions services. The State Department determined this information was not exempt from disclosure under the FOIA. Using the standard prescribed in 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act (whether agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"), the district court upheld the State Department's decision to release the information. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

PAE provides maintenance and operations personnel services to the United States government at various locations around the world. In 1985, PAE was awarded a contract to furnish these services for a building which is part of the United States Embassy in Moscow. Under the contract, PAE agreed to supply maintenance, operations, repair and custodial personnel in a total of thirteen different job categories. PAE's contract with the government set forth a "unit price rate" for each of the job categories. This "unit price rate" was the hourly amount PAE charged the government for services provided by PAE's personnel. The rate was made up of a number of components. Among these components was the base wage rate applicable to each relevant job category, plus additional items for that category which included FICA payroll taxes, unemployment insurance, overhead costs, general corporate and administrative expenses, and PAE's fee. This fee was PAE's hourly profit margin. The contract disclosed only the "unit price rate," not the component parts which made up that rate.

In 1986, the State Department received requests from three of PAE's competitors for copies of PAE's Moscow Embassy contract. The State Department advised PAE in March 1987 of these requests and asked PAE to review the contract to determine which portions, if any, PAE deemed non-

disclosable. At first, PAE objected to any disclosure, but subsequently limited its objections to disclosure of the "unit price rates." PAE claimed this information was exempt from disclosure under section 552(b)(4) of the FOIA.[1]

The State Department replied by letter in July 1988. It stated that based on its information and the information PAE had provided, disclosure of the "unit price rates" would not cause competitive harm to PAE because of the number of variables that went into determining these rates for the various job categories. PAE reasserted its objections. In October 1988, the State Department notified PAE that it had rejected PAE's objections to disclosure. The State Department stated that in the absence of a court order, the entire contract would be disclosed within ten days. PAE then filed the present action in the district court.

The district court denied PAE's request for a preliminary injunction. It granted summary judgment *sua sponte* in favor of the government. The district court determined that the State Department's fact-finding procedures as disclosed by its record were adequate, that the Department had not abused its discretion in making its exemption determination, and that the Department had not acted arbitrarily, capriciously, or otherwise not in accordance with law. PAE filed a timely notice of appeal. Pending appeal, the district court granted an injunction preventing disclosure of the subject information.

## DISCUSSION

■  Under the FOIA,

[s]ubsection (a), 5 U.S.C. § 552(a), places a general obligation on the agency to make information available to the public and sets out specific modes of disclosure for certain classes of information. Subsection (b), 5 U.S.C. § 552(b), which lists the exemptions simply states that the specific material is not subject to the

---

1. Section 552(b)(4) provides:
   (b) This section [requiring disclosure of information] does not apply to matters that are—
   .   .   .   .   .

   (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential. . . .

   5 U.S.C. § 552(b)(4) (1970).

disclosure obligations set out in subsection (a). By its terms, subsection (b) demarcates the agency's obligation to disclose; it does not foreclose disclosure. *Chrysler Corp. v. Brown,* 441 U.S. 281, 291–92, 99 S.Ct. 1705, 1712–13, 60 L.Ed.2d 208 (1979).

If, however, release of requested information is barred by some other statute or regulation, the agency does not have discretion to release it. *See Chrysler,* 441 U.S. at 293–94, 99 S.Ct. at 1713–14; *Acumenics Research and Technology v. Dept. of Justice,* 843 F.2d 800, 806 (4th Cir.1988). The Supreme Court in *Chrysler* held that the Trade Secrets Act, 18 U.S.C. § 1905 ("section 1905"), qualifies as a barring statute.[2] *See Chrysler,* 441 U.S. at 301, 99 S.Ct. at 1717. The Fourth Circuit has held that "the scope of section 1905 and exemption (4) of the FOIA are, ... 'the same,' or, ... 'coextensive.' Accordingly, material qualifying for exemption under (b)(4) falls in the material, disclosure of which is prohibited under section 1905." *See General Motors Corp. v. Marshall,* 654 F.2d 294, 297 (4th Cir.1981), quoting from *Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190, 1204 n. 38 (4th Cir.), *cert. denied,* 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1976).

Exemption provided by section 552(b)(4) of the FOIA is available to prevent disclosure of (1) trade secrets and commercial or financial information, (2) obtained from a person or by the government, (3) that are privileged or confidential. 5 U.S.C. § 552(b)(4) (1970). These three requirements are conjunctive. *National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765, 766 (D.C.Cir.1974). We assume for purposes of this opinion that PAE can satisfy the first two requirements. The question is whether the information is privileged or confidential.

To determine if information is privileged or confidential requires an analysis of whether the information will (1) "impair the Government's ability to obtain necessary information in the future," or (2) "cause potential harm to the competitive position of the person from whom the information was obtained." *National Parks,* 498 F.2d at 770. PAE bases its objection to disclosure on the second prong of this test. It contends that release of the "unit price rates" will cause potential harm to its competitive position because it will enable a competitor to determine PAE's profit margin. PAE argues a competitor will be able to calculate its profit margin simply by subtracting from the "unit price rates" in the contract the various component parts which make up those rates; and, according to PAE, these component parts are either set by statute or standardized within the industry.

The arguments PAE asserts for nondisclosure are the same arguments it addressed to the State Department and to the district court. The State Department determined that the information was not protectable as a trade secret because the aggregate figures which are the "unit price rates" are made up of a number of fluctuating variables. Thus, reasoned the State Department, a competitor would not be able to calculate PAE's profit margin from the "unit price rates." The district court refused to conduct a trial de novo to redetermine this issue. Instead, it upheld the State Department's decision by concluding that the State Department had not abused its discretion, nor had it acted arbitrarily, capriciously, or otherwise not in accordance with law.

■ We review the district court's decision de novo. Applying this standard of review, we consider, as did the district court, what deference to give the State Department's determination to disclose the information. Under 5 U.S.C. § 706(2)(A) and (F) of the Administrative Procedure Act, we may

---

2. The Trade Secrets Act imposes criminal sanctions on government employees who disclose or make known, in any manner or to any extent "not authorized by law," certain classes of information submitted to a government agency, including trade secrets and confidential statistical data. 18 U.S.C. § 1905.

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

  (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]

  .    .    .    .    .

  (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2)(A) and (F).

  ▮ We agree with the district court that under section 706(2)(A), the State Department's decision to disclose the entire contract was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. PAE also argues, however, that under section 706(2)(F) the district court should have conducted a trial de novo to determine whether the information should be disclosed. It is PAE's position that the district court should have gone beyond the agency's record, taken evidence apart from that disclosed by the record, and made its own determination whether the information PAE seeks to protect is barred from disclosure under section 552(b)(4) of the FOIA and the Trade Secrets Act, 18 U.S.C. § 1905. This, PAE argues, is the "trial de novo" which 5 U.S.C. § 706(2)(F) promises and which PAE was denied.

  The Supreme Court has interpreted section 706(2)(F) to justify a trial de novo in only two situations: (1) "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," and (2) "when issues that were not before the agency are raised in the proceeding to enforce nonadjudicatory agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *see also Camp v. Pitts*, 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973); *Acumenics Research & Tech. v. Department of Justice*, 843 F.2d 800, 804 (4th Cir.1988). The present case concerns agency action to release information pursuant to the FOIA against the wishes of the party that submitted the information to the government. This is agency action which is adjudicatory in nature. *Acumenics*, 843 F.2d at 804. The question we must decide, therefore, is whether the State Department's factfinding procedures were adequate.

  In March of 1987 PAE was given notice that the State Department had received requests for information regarding the Moscow Embassy contract. PAE was given an opportunity to state any objections it had to disclosure of the information and to supply any supporting documentation for its objections. PAE did this. The record reflects that the State Department gave careful consideration to PAE's objections. In the course of its proceedings, the State Department rejected the requests of third parties who sought predecisional bid abstracts that PAE had submitted and bid evaluations prepared by PAE's contracting officer. The State Department determined, however, that the "unit price rates" of the PAE contract were not protectable as confidential information under section 552(b)(4) of the FOIA. The State Department provided PAE with a statement of its reasons for this decision. Thereafter, on July 26, 1988, the State Department gave PAE a further opportunity to send additional information to the Department in support of PAE's objections to the release of the "unit price rates". PAE responded with a five-page letter from its counsel setting forth extensive legal arguments and reiterating the basis for its objections. Only after all of this did the State Department finally reject PAE's objections.

  We have independently reviewed the State Department's record of its proceedings. The record reflects that the Department's factfinding procedures were adequate. Accordingly, the Department's decision to disclose the subject information is not reviewable by a trial de novo under 5 U.S.C. § 706(2)(F). *See Acumenics*, 843 F.2d at 805; *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460.

  The district court's injunction barring disclosure of the subject information pending appeal is dissolved. The district court's

summary judgment in favor of the State Department is AFFIRMED.