**GC MICRO CORPORATION,**
Plaintiff–Appellant,

v.

**DEFENSE LOGISTICS AGENCY,**
Defendant–Appellee.

No. 92–16546.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1994.

Decided Aug. 26, 1994.

---

Nancy G. Krop, Law Offices of Daniel Robert Bartley, Larkspur, CA, for plaintiff-appellant.

Ann M. O'Regan, Asst. U.S. Atty., San Francisco, CA, for defendant-appellee.

Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.

GOODWIN, Circuit Judge:

Appellant GC Micro Corporation brought an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), challenging appellee Defense Logistics Agency's ("the DLA") denial of access to certain records that the DLA maintains regarding the utilization of small disadvantaged businesses by federal defense contractors. The district court granted summary judgment in favor of the DLA, finding that the DLA properly withheld records under 5 U.S.C. § 552(b)(4) ("FOIA Exemption 4"), which allows the withholding of government documents where disclosure would likely result in substantial competitive injury to private businesses. GC Micro appeals the district court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse.

## BACKGROUND

GC Micro is a small computer software and hardware distributor based in Novato, California. The owner and chief executive officer of GC Micro, Belinda Guadarrama, is a woman of Mexican–American descent. GC Micro therefore qualifies as a "Small Disadvantaged Business" ("SDB") within the meaning of the Small Business Act, 15 U.S.C. §§ 637(a), 644(g)—*i.e.*, it is "owned and controlled by [a] socially and economically disadvantaged individual[ ]."

Congress amended the Small Business Act in 1978, mandating that the federal govern-

ment encourage government contractors to subcontract to SDB's. 15 U.S.C. § 637(a)(1)(B). In 1988, Congress directed the federal government to establish annual minimum goals for the participation of SDB's in procurement contracts, providing that not less than five percent of all federal contracts and subcontracts be awarded SDB's. 15 U.S.C. § 644(g). Regulations subsequently enacted to implement SDB goals require contractors to file reports so that federal agencies can monitor compliance with SDB goals. Within the Department of Defense, contractors are required to file Standard Forms 294 and 295. *See* 48 C.F.R. §§ 53.219, 19.-704(a)(5).

In 1990, GC Micro became interested in the possible noncompliance of defense contractors with SDB subcontracting goals when one contractor, Hercules Aerospace, allegedly refused to subcontract work to GC Micro or any other SDB firm. GC Micro began making FOIA requests to the DLA and other federal agencies for documents filed by various contractors relating to the implementation and attainment of SDB goals. According to GC Micro, the DLA routinely disclosed these documents.

█ The Small Business Act provides no private right of action to enforce SDB goals. *Searcy v. Houston Lighting & Power Co.*, 907 F.2d 562, 564–65 (5th Cir.), *cert. denied*, 498 U.S. 970, 111 S.Ct. 438, 112 L.Ed.2d 421 (1990). However, counsel for GC Micro stated to the district court that knowledge of whether certain contractors are complying with their SDB goals is important to GC Micro because "[i]t's a good selling tool for [CEO Belinda Guadarrama] to go into these contractors, target the ones that aren't meeting [their SDB goals], [and] go in and help them meet their goal." Tr. at 11.

In January 1991,[1] GC Micro made a written request to the DLA for disclosure of certain documents pertaining to United States Department of Defense contracts with Loral Aerospace, McDonnell Douglas Corporation, and Northrop Corporation. Among the documents that GC Micro requested were (1) the most recent Standard Form ("SF") 295's, and (2) the most recent SF 294's filed by all three corporations. SER, Vol. 2, Tab 4A. The SF 295 is a quarterly summary report of a contractor's compliance with its SDB subcontracting goals. It is a composite record of all contracts that the submitting company has with the federal government.

The SF 294 is a semiannual report of a contractor's progress in implementing its subcontracting plan. A separate SF 294 is prepared for each defense contract that a contractor has with the United States. The SF 294 requires every federal contractor to disclose, *inter alia*, (1) the estimated subcontract dollars per contract; (2) SDB subcontracting goals, both by percentage and total dollar amounts; (3) the actual dollars spent by the contractor on SDB subcontracts; and (4) the actual percentage of SDB subcontracts on each contract. The SF 294 does not show a breakdown of how the contractor is subcontracting the work, nor does it reveal the subject matter of the prime contract or subcontracts, the number of subcontracts, the items or services subcontracted, or the subcontractors' locations or identities.

In accordance with DLA Regulation 5400.-14, the DLA notified Loral, McDonnell Douglas, and Northrop of GC Micro's FOIA request and allowed them an opportunity to object to the disclosure of the requested information. SER, Vol. 2, Tab 4 at 3–4. The three corporations made no objection to the disclosure of the SF 295's, but did object to the disclosure of the subcontractor information contained in Blocks 14–18 of the SF 294 (4–81 edition) and Blocks 12–18 of the SF 294 (1–90 revised edition). The corporations stated that this information was confidential and argued that its disclosure would likely cause them substantial competitive harm. SER, Vol. 2, Tab 4B.

In May 1991, the DLA released the relevant SF 295's, but refused to release the SF 294's. GC Micro appealed these denials to the DLA's director, Lieutenant General

---

1. Although the letters written by GC Micro CEO Belinda Guadarrama were dated January 29, 1990, the sequence of events as reported in the record indicates that the letters were probably misdated. *See* SER, Vol. 2, Tab 4A.

Charles McClausland. On August 19, 1991, Lieutenant General McClausland issued a final decision upholding the agency's determination. On November 18, 1991, GC Micro filed this action in federal district court seeking: (1) a preliminary and final injunction directing DLA to release the SF 294's to GC Micro; (2) a preliminary and final injunction striking part of a DLA regulation, 32 C.F.R. § 1285.3(e)(3) (1991); and (3) FOIA attorneys' fees and costs. The district court granted the DLA's motion for summary judgment, holding that the information contained in the SF 294's was confidential and therefore fell under FOIA Exemption 4. GC Micro filed a timely notice of appeal on August 27, 1992.

## STANDARD OF REVIEW

■ We must engage in a two-part inquiry in reviewing the district court's FOIA decision. *See Dirksen v. United States Dep't of Health & Human Services,* 803 F.2d 1456, 1458 (9th Cir.1986) (commenting on the "unusual" standard of review of summary judgments in FOIA cases). First, we determine whether the district court had an adequate factual basis on which to make its decision. *Bowen v. FDA,* 925 F.2d 1225, 1226–27 (9th Cir.1991). If an adequate factual basis was established, we then review the district court's decision that the requested documents were properly exempted for clear error. *Id.*

The parties do not dispute that the district court had an adequate factual basis for its decision. Nor do the parties dispute the basic facts on appeal. We therefore turn to the question whether the district court's judgment was clearly erroneous. *See Mult-*

*nomah County Medical Soc'y v. Scott,* 825 F.2d 1410, 1413 (9th Cir.1987).

## DISCUSSION

I. *The Grant of Summary Judgment in Favor of the DLA*

A. *FOIA Exemption 4*

■ The Freedom of Information Act, 5 U.S.C. § 552, contains nine exemptions to its general policy mandating the broad disclosure of government documents. These nine exemptions are to be narrowly construed by the courts. *Church of Scientology of California v. Department of the Army,* 611 F.2d 738, 742 (9th Cir.1980) (citing *Bristol–Meyers Co. v. FTC,* 424 F.2d 935 (D.C.Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970)). The DLA relies on "Exemption 4," 5 U.S.C. § 552(b)(4), which is available to prevent disclosure of (1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential.[2] *See Pacific Architects & Engineers Inc. v. United States Dep't of State,* 906 F.2d 1345, 1347 (9th Cir.1990).

GC Micro contests the district court's finding as to the third element of Exemption 4— *i.e.,* that the information contained in the requested SF 294's is confidential.[3] Information qualifies as "confidential" for the purposes of Exemption 4

> if disclosure is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

---

**2.** Section 552(b)(4) specifically provides:
(b) This section [requiring disclosure of information] does not apply to matters that are—
. . . .
(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential . . .
5 U.S.C. § 552(b)(4).

**3.** In addition, GC Micro argues that the DLA has waived its right to claim that the SF 294's at issue are confidential because it has released the SF 294's of other corporations in the past. However, the fact that the DLA has previously re-

leased *other* corporations' SF 294's has little bearing on the appropriateness of disclosure here. *Cf. Worthington Compressors, Inc. v. Costle,* 662 F.2d 45, 51 (D.C.Cir.1981) ("[i]f the information is freely or cheaply available from other sources . . ., it can hardly be called confidential"). In addition, GC Micro does not allege in those cases where SF 294's were released that the DLA did not follow its internal procedure by first allowing the contractors involved an opportunity to object to disclosure. Thus, this argument is unpersuasive.

*National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C.Cir.1974).[4] The district court held that the SF 294's at issue were confidential under the second leg of the *National Parks* test because disclosure would likely "result in lost competitiveness and unfair advantage to other contractors competing with Loral, McDonnell Douglas, and Northrop." Dist.Ct.Order at 2.

GC Micro argues that disclosure of the SF 294's would promote the policy, enunciated by Congress in its amendments to the Small Business Act, of increasing small disadvantaged businesses' involvement in government contracts. The DLA responds that the SF 295's, which it has already released, contain all the information necessary to gauge the agency's record in achieving its SDB goals—namely, aggregate SDB subcontracting percentages and dollar amounts. The DLA further argues that the purpose behind GC Micro's request is irrelevant to whether or not information is confidential and subject to Exemption 4.

"[T]he test for confidentiality is an objective one." *National Parks*, 498 F.2d at 766–67 (citing *Bristol–Myers Co. v. FTC*, 424 F.2d at 938; *Benson v. GSA*, 289 F.Supp. 590, 594 (W.D.Wash.1968), *aff'd*, 415 F.2d 878 (9th Cir.1969)). For example, whether the information is of a type which would normally be made available to the public, or whether the government has promised to keep the information confidential, is not dispositive under Exemption 4. *See Petkas v. Staats*, 501 F.2d 887, 889–90 (D.C.Cir.1974); *Save the Dolphins v. Department of Commerce*, 404 F.Supp. 407 (N.D.Cal.1975).

The SBA does not mandate the disclosure of data on SDB subcontracting collected by federal agencies, and therefore the statute is not dispositive in determining whether the information contained in the SF 294's is confidential under FOIA. Nevertheless, disclosure of the SF 294's would enable "the public to evaluate the wisdom and efficiency of federal programs and expenditures," as well as an executive agency's compliance with feder-

al law. *See Racal–Milgo Government Systems, Inc. v. SBA*, 559 F.Supp. 4, 6 (D.D.C. 1981). To the extent that releasing the SF 294's does not cause substantial harm to the competitive positions of the federal contractors involved, while encouraging federal contractors in general to set higher SDB subcontracting goals, congressional intent in passing both FOIA and the Small Business Act amendments will have been furthered. *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974) ("when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

**B.** *The Evidence Submitted by the DLA*

■ An agency seeking to withhold information under an exemption to FOIA has the burden of proving that the information falls under the claimed exemption. *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir.1987). Courts have generally required agencies to submit detailed affidavits identifying the documents at issue and explaining why they fall under the claimed exemption. *Id.; Landfair v. Department of the Army*, 645 F.Supp. 325 (D.D.C.1986). While conclusory and generalized allegations of competitive harm are insufficient to show that requested information is "confidential" under the second prong of the *National Parks* test, the parties opposing disclosure need not show actual competitive harm. *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290–91 (D.C.Cir.1983); *accord Sharyland Water Supply Corp. v. Block*, 755 F.2d 397, 399 (5th Cir.), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 697 (1985). Rather, evidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury is sufficient to bring commercial information under Exemption 4. *Id.*

■ As part of its motion for summary judgment, the DLA submitted declarations by officers of each of the three corporations

---

**4.** *See also CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1152–53 n. 146 (D.C.Cir.1987) (noting that the *National Parks* test has become "known to and acquiesced in by Congress"), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988); *Miller, Anderson, Nash, Yerke & Wiener v. Department of Energy*, 499 F.Supp. 767, 771 (D.Or.1980) (declaring the *National Parks* test to be the most often cited construction of "confidential" under FOIA).

involved. *See* SER, Vol. 2, Tabs 1–3. Each of these declarations states generally that disclosure of the SF 294's, which contain proprietary information not otherwise available to the public, would cause substantial harm to the corporations' competitive positions because it would provide competitors with a roadmap of the corporations' subcontracting plans and strategies. *See, e.g.,* Decl. Jay P. Cooper (SER, Vol. 2, Tab 3). James F. Price, Associate Counsel at Loral Aeronutronic, offers the following illustration of the potential harm to Loral:

> To illustrate the point, consider that Boxes 12 and 13 [of the SF 294] contain information on subcontracting pricing and Boxes 15 and 16 contain actual purchase order commitments against a particular contract. The analysis of this historical data provides a profile of exactly how Loral Aeronutronic conducts its business with regard to the use of small business in various types of government contracts.

SER, Vol. 2, Tab 1 at 3. Similarly, the declaration of William R. Mizer, Socio-Economic Executive for McDonnell Douglas Space Systems Company, concludes that "[i]f competitors are permitted to gain knowledge of McDonnell Douglas' overall subcontracting strategy, they could alter their subcontracting strategies to better compete against McDonnell Douglas for future contracts" involving hundreds of millions of dollars. SER, Vol. 2, Tab 2 at 3.

The declarations submitted by Loral, McDonnell Douglas, and Northrop assert that disclosure of the subcontracting information contained in the SF 294 would allow their competitors to undercut future bids because the percentage of the prime contract subcontracted out to SDB's is one of the factors that the DLA considers in awarding contracts. The three defense contractors argue that their competitors could win contracts away from them by promising the DLA that they would subcontract to a greater percentage of SDB's than the three contractors had in the past.

In response, GC Micro notes that the SF 294 does not reveal the subject matter of the prime contract or subcontracts, the number of subcontracts, the items or services subcon-

tracted, how the contractor is subcontracting the work, or the subcontractors' locations or identities. Without more detailed information, GC Micro argues, the figures reported on the SF 294 contain too many fluctuating components to give the defense contractors' competition any advantage. GC Micro cites *Pacific Architects & Engineers, Inc. v. United States Dep't of State,* 906 F.2d 1345 (9th Cir.1990), in support of its contention that disclosure of the SF 294's would not result in substantial competitive harm.

In *Pacific Architects & Engineers,* a private contractor objected to the government's disclosure of its contract with the State Department, arguing that unit prices listed on the contract constituted confidential information. *Pacific Architects & Engineers,* 906 F.2d at 1347. We held that the State Department's decision to disclose the contract was not arbitrary and capricious because the agency engaged in adequate factfinding prior to making its decision. *Id.* at 1348. Specifically, the State Department determined that the unit price rates were not confidential because they were made up of a number of fluctuating variables, and therefore that the disclosed information would not enable competitors to calculate the contractor's profit margin. *Id.* at 1347; *see also Racal–Milgo Government Systems, Inc. v. Small Business Admin.,* 559 F.Supp. 4, 6 (D.D.C.1981) (disclosure of aggregate pricing information insufficient to evaluate cost efficiency of contract because computer systems vary widely).

The DLA correctly notes that the Ninth Circuit never actually reached the merits of the State Department's decision in *Pacific Architects & Engineers*—it was a "reverse FOIA" case decided under the deferential review standard of the Administrative Procedure Act, 5 U.S.C. § 706, not FOIA. 906 F.2d at 1347–48. Nevertheless, we agree with the State Department's underlying rationale. Here, despite the rather conclusory statements made by Loral executive James F. Price and the other defense company executives, the DLA has failed to show how analysis of the data listed in the SF 294 would provide competitors with a profile of exactly how a defense contractor conducts its business with regard to the use of SDB's in

various types of government contracts. Disclosure of SDB subcontracting amounts reveals little of the factors involved in deriving those numbers, and therefore is unlikely to work a substantial harm on the competitive positions of defense contractors. The data is made up of too many fluctuating variables for competitors to gain any advantage from the disclosure of the SF 294's.

In *Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527, 530 (D.C.Cir. 1979), the D.C. Circuit enunciated a standard for determining whether the disclosure of commercial information in the government's possession would likely cause substantial harm to a firm's competitive position. Such information will result in substantial competitive harm if it "would allow competitors to estimate, and undercut, [the firm's] bids." *Gulf & Western Industries*, 615 F.2d at 530. The information that the *Gulf & Western Industries* court found to be confidential included the firm's profit rate, actual loss data, general and administrative expense rates, projected scrap rates, and learning curve data. *Id.* at 529. Here, by contrast, data on the percentage and dollar amount of work subcontracted out to SDB's on each defense contract tells competitors nothing of, *inter alia*, the object of the contract or subcontracts, the unit prices charged by the subcontractors, and the profit or productivity rates of either the contractor or subcontractors. The data at issue therefore would provide little if any help to competitors attempting to estimate and undercut the contractors' bids. *Cf. Acumenics Research & Technology v. United States Dep't of Justice*, 843 F.2d 800,

807 (4th Cir.1988) (no evidence that direct costs and production rates are standardized throughout industry, thus no likelihood of substantial competitive harm from disclosure of unit price information).

While the law does not require the DLA to engage in a sophisticated economic analysis of the substantial competitive harm to its contractors that might result from disclosure, *see Public Citizen Health Research Group v. FDA*, 704 F.2d 1280 (D.C.Cir.1983), in order to prevail the DLA must meet its burden of showing a potential of substantial competitive harm to its contractors. The DLA has not met this burden.[5]

We agree with the D.C. Circuit that, in making our determination, we must balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information. *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768–69 (D.C.Cir.1974). Based on the record in this case, we believe that FOIA's strong presumption in favor of disclosure trumps the contractors' right to privacy. Those seeking to prevent disclosure of certain information under FOIA have the burden of proving that the information is confidential. It is questionable whether the declarations submitted by the three contractors show *any* potential for competitive harm, let alone *substantial* harm. Congress did not pass Exemption 4 to protect large corporations from persistent computer salespeople. We hold that the district court clearly erred in granting summary judgment in favor of the DLA.[6]

---

**5.** The DLA also notes that counsel for GC Micro stated to the district court that disclosure of the SF 294's constitutes "a legally required disadvantage for the individual not complying with his [SDB] subcontracting goals." Tr. at 8. According to the DLA, this constitutes a judicial admission by the appellant that harm to the three contractors' competitive positions would result from disclosure. This admission, the DLA claims, is binding on the Court. *See, e.g., United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2310, 119 L.Ed.2d 230 (1992) (judicial admission that defendant did not file income tax returns binding on appellate court). However, the case law requires that the harm be *substantial*, and plaintiff's counsel offered no opinion as to the extent of the "disadvantage." In any event, plaintiff's

counsel in the same breath argued that the SF 294's were "not confidential information," calling into question his inartful concession. Tr. at 8.

**6.** Because copies of the SF 294 were in both the district court and appellate court records, there is no need to remand the case for "a more detailed identification of the nature of the documents in question." *Ackerly v. Ley*, 420 F.2d 1336, 1342 (D.C.Cir.1969); *see also Cuneo v. Schlesinger*, 484 F.2d 1086, 1091 (D.C.Cir.1973) (case remanded because court had no record of allegedly secret documents), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Nor is there any doubt, in view of the district court's hearing and order, as to "the reasons why the particular documents were regarded as

## II. *DLA Regulations*

 GC Micro also challenges a certain DLA regulation outlining the agency's policies regarding the disclosure of information determined to fall under Exemption 4. It argues that the regulation is unlawful and contrary to the intent and purpose of FOIA.[7] The district court did not address this issue.

The DLA recently deleted the regulation in question and therefore this issue is moot. Although GC Micro does not contest the mootness of this issue, it requests the Court to "rule on the regulation to guide DLA in properly exercising its future discretion." We, however, are without jurisdiction to address this claim. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990) (the specific grievance must continue to be present at *every stage* of the proceedings or else jurisdiction is lost).[8]

## III. *Attorneys' Fees*

The district court, in its discretion, may award fees to a claimant who "substantially prevails" under FOIA. 5 U.S.C. § 552(a)(4)(E). Because we hold that the district court erred in granting the DLA's motion for summary judgment, we remand this matter to the district court for determination. *See, e.g., United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Local 598 v. Department of the Army*, 841 F.2d 1459, 1461 (9th Cir.1988) (district court must consider four factors in deciding whether award of fees is appropriate).

## CONCLUSION

The judgment of the district court is **REVERSED,** and the case is **REMANDED** for entry of summary judgment in favor of the appellant and a determination whether an award of attorneys' fees is appropriate.

---

exempted." *Ackerly*, 420 F.2d at 1342; *accord Van Bourg, Allen, Weinberg & Roger v. NLRB*, 656 F.2d 1356 (9th Cir.1981) (remand necessary where district court failed to "state in reasonable detail the reasons for its decision"). As our discussion reveals, the SF 294 is more telling in the data it does not contain than in the data it does. Thus, we believe that further factfinding neither is necessary nor would it be helpful.

7. The regulation, 32 C.F.R. § 1285.3(e)(3) (1991), provides in part:

> *Jeopardy of Government Interest.* If a DLA activity determines that a record requested under the FOIA meets the exemption 4 withholding criteria set forth in this regulation, the DLA activity shall not ordinarily exercise its discretionary power to release, absent circumstances

in which a compelling interest will be served by releasing that record.

8. Even if GC Micro's claim were not moot, it is meritless. The regulation at issue only came into play if Exemption 4 was found to apply to the requested documents. The FOIA exemptions do not act as mandatory bars to disclosure. *See Chrysler v. Brown*, 441 U.S. 281, 290 n. 9, 99 S.Ct. 1705, 1712 n. 9, 60 L.Ed.2d 208 (1978). Once an FOIA exemption is triggered, the government is free to exercise its discretion whether or not to disclose certain information. Consequently, the deleted DLA regulation constituted a reasonable interpretation of the FOIA statutory scheme by an agency charged with enforcing it. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45, 2782–83, 81 L.Ed.2d 694 (1984).