97 F.3d 367
 41 Cont.Cas.Fed. (CCH) P 77,057, 96 Cal. Daily
Op. Serv. 7368,
96 Daily Journal D.A.R. 12,067
James E. FRAZEE and Joann P. Frazee, doing business as High
Lakes Contractors, Plaintiffs-Appellants,
v.
UNITED STATES FOREST SERVICE; United States Department of
Agriculture; John E. Lowe, Regional Forester, Pacific
Northwest Region; Sally Collins, Supervisor of Deschutes
National Forest, Defendants-Appellees.
 No. 95-35333.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 19, 1996.
Decided Oct. 2, 1996.
 
 John B. Crowell, Jr., Lane, Powell, Spears, Lubersky, Portland, OR, for plaintiffs-appellants.
 Judith D. Kobbervig, Assistant United States Attorney, Portland, OR, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon, Donald C. Ashmanskas, Magistrate Judge, Presiding. D.C. No. CV-94-01007-DCA.
 Before: PREGERSON, BOOCHEVER and T.G. NELSON, Circuit Judges.
 OPINION
 PREGERSON, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants James E. and Joann P. Frazee, doing business as High Lakes Contractors (collectively, the "Frazees") challenge an administrative agency decision to release information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The United States Forest Service, United States Department of Agriculture, John E. Lowe, Regional Forester, Pacific Northwest Region, and Sally Collins, Supervisor of Deschutes National Forest (collectively, "Forest Service") decided to disclose the Frazees' Operating Plan for managing two Forest Service recreational facilities in response to a FOIA request. The Frazees filed suit in district court to prevent this disclosure, alleging their Operating Plan was exempt from disclosure as confidential information protected by § (b)(4) of FOIA, 5 U.S.C. § 552(b)(4). On cross motions for summary judgment, the district court granted summary judgment in favor of the Forest Service and dismissed the Frazees' complaint. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 I.
 
 2
 Through a Solicitation for Offers dated November 16, 1993 ("Solicitation"), the Forest Service sought proposals for qualified applicants to operate the Cascade Lakes Complex of recreational campgrounds and day-use areas in the Bend District of the Deschutes National Forest. The Solicitation provided that the Forest Service would issue a Special Use Permit ("Permit") to the successful applicant for a twelve-month period. This Permit is a public document.
 
 
 3
 The Solicitation required applicants to submit the following: verification of financial responsibility, including a cash flow analysis, financial statement, payment history, and verification of accounts for each financial institution; estimated income and expenses; three business references; a detailed description of applicable business experience; and a proposed operating plan. The proposed operating plan required a description of operating seasons, equipment, supplies, storage, personnel management, cleaning and maintenance, law enforcement and security, fee collection, public information, and health and safety. The Solicitation also served as a guideline for drafting a proposal.
 
 
 4
 The Solicitation assured applicants that "ALL INFORMATION DERIVED FROM THIS REVIEW IS CONFIDENTIAL AND FOR OFFICIAL USE ONLY." A Forest Service representative repeated this assurance of confidentiality at public pre-application meetings held on November 2, and November 29, 1993. But the Solicitation also stipulated that the selected applicant's final operating plan would be attached to and made a part of the Permit, a public document. At the same two November meetings, a Forest Service representative informed applicants that those portions of documents that become public information would be available to the public through FOIA requests.
 
 
 5
 The Frazees responded to the Solicitation with a proposal which included a proposed operating plan. The Forest Service selected the Frazees' application and awarded them the Permit for the Cascades Lakes Complex for the period effective March 16, 1994 through December 31, 1994. Following the award of the Permit, the Frazees, as required by the Forest Service, modified their proposed operating plan. This modified plan, once approved by the Forest Service, became a final operating plan ("Plan") and was attached to and made a part of the Permit.
 
 
 6
 The previous year, the Frazees had unsuccessfully bid for the 1993 Permit. After the bid was rejected, the Frazees filed a FOIA request with the Forest Service, seeking to obtain full copies of all the proposals submitted, successful and unsuccessful. That FOIA request also sought copies of the Forest Service's "evaluation sheets completed by the evaluation team as part of the review and selection process." The Forest Service denied the Frazees' request on the ground that the proposals and the evaluations were derived from the application review process and thus were confidential, as the Forest Service had assured prospective applicants in the Solicitation and in public meetings.
 
 
 7
 On June 3, 1994, pursuant to FOIA, an attorney for a competitor requested a copy of the Frazees' Plan from the Forest Service.[1] Upon receiving the FOIA request, the Supervisor of the Deschutes National Forest gave the Frazees an opportunity to object to the release of any financial or confidential information contained in the Plan. The Frazees objected to the disclosure of the Plan or any portion thereof.
 
 
 8
 On July 15, 1994, the FOIA request and the Frazees' objection were forwarded to the Regional FOIA Coordinator for the Forest Service's Pacific Northwest Region. On July 29, 1994, the Coordinator notified the Frazees that, "After a thorough review, it has been determined [that the Plan is] public information." The Coordinator explained that when the Permit was issued to the Frazees, the Plan became a part of the Permit available to the public as a public document. After receiving this disclosure notification, the Frazees filed a reverse FOIA action in district court to enjoin the Forest Service from releasing the Plan.
 
 
 9
 On cross motions for summary judgment, the district court upheld the Forest Service's decision to release the Plan and dismissed the Frazees' complaint. The district court, after reviewing the documents in question in camera, found that most of the information contained in the Plan was publicly available and/or was taken directly from the Solicitation, from the Guidebook for Establishing and Managing Campground Concession Operations,[2] or from other sources. The district court determined that based on the record, the Forest Service had adequate factual basis for its decision to disclose, that it had not abused its discretion in deciding to disclose, and that it had not acted arbitrarily, capriciously, or otherwise not in accordance with law. The district court therefore determined that the Plan was not protected from disclosure under Exemption 4 of FOIA nor under the Trade Secrets Act, with the exception of two items in the Plan.[3]
 
 
 10
 The Frazees appeal the district court's grant of summary judgment. On appeal, the Frazees claim that: (1) the district court clearly erred by failing to analyze whether disclosure of the Plan would likely cause the Frazees substantial competitive harm; (2) this circuit should adopt the District of Columbia Circuit's test for protecting information volunteered to the government; (3) the Forest Service is bound by its promise to keep proposals confidential and should be held to its 1993 "precedent" where it refused to release to the Frazees all bidders' proposals and the Forest Service's evaluations of these proposals; and (4) alternatively, the Trade Secrets Act prohibits release of the Plan. The Forest Service agreed not to release the Plan during the pendency of this appeal.
 
 II.
 
 11
 This circuit employs a special standard to review factual issues arising in an appeal from the grant of summary judgment in a FOIA case. "Instead of determining whether a genuine issue of material fact exists, we employ the following two-step standard. We inquire whether an adequate factual basis supports the district court's ruling. If such a basis exists, we overturn the ruling only if it is clearly erroneous." Rosenfeld v. United States Dep't of Justice, 57 F.3d 803, 807 (9th Cir.1995).
 
 
 12
 The parties do not dispute that the district court had an adequate factual basis for its decision. Therefore, our only inquiry in this case is whether the district court's decision was clearly erroneous. GC Micro Corp. v. Defense Logistics Agency, 33 F.3d 1109, 1112 (9th Cir.1994). "Under this standard, we will reverse only if we are left with a definite and firm conviction that the district court has erred." National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1116 (9th Cir.1988).
 
 III.
 
 13
 Section (a) of FOIA, 5 U.S.C. § 552, "places a general obligation on the [government] agency to make information available to the public...." Pacific Architects & Eng. v. United States Dep't of State, 906 F.2d 1345, 1346 (9th Cir.1990). FOIA contains nine exceptions to this presumption of disclosure "that are to be narrowly construed by the courts." GC Micro, 33 F.3d at 1112. Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4), exempts from disclosure commercial or financial information that is "privileged or confidential."[4] See Id. at 1112. Because the parties agree that the Plan is commercial information, the only issue on appeal is whether the information is privileged or confidential.
 
 
 14
 The leading case on Exemption 4 sets out the test for exempting commercial information from FOIA disclosure as follows:Commercial or financial matter is "confidential" for purposes of [Exemption 4] if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.
 
 
 15
 National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C.Cir.1974) (footnote omitted). We adopted this test in GC Micro, 33 F.3d at 1112. The parties further agree that this case turns on the second prong of the National Parks confidentiality test--whether disclosure would cause substantial competitive harm.
 
 
 16
 The party seeking to withhold information under Exemption 4 has the burden of proving that the information is protected from disclosure under FOIA. GC Micro, 33 F.3d at 1113. While a party need not show actual competitive harm, it must present specific "evidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury" in order to prove that the information falls under Exemption 4. Id.
 
 
 17
 " 'If the information is freely or cheaply available from other sources ..., it can hardly be called confidential' " and government agency disclosure is unlikely to competitively harm the submitter. GC Micro, 33 F.3d at 1112 n. 3. (quoting Worthington Compressors, Inc. v. Costle, 662 F.2d 45, 51 (D.C.Cir.1981)).
 
 
 18
 The identity of the requestor, even if a competitor, is irrelevant in determining whether the information sought is exempt from disclosure under FOIA. See U.S. Dept. of Justice v. Reporters Comm., 489 U.S. 749, 771-72, 109 S.Ct. 1468, 1480-81, 103 L.Ed.2d 774 (1989).
 
 IV.
 
 19
 The Frazees argue that the district court failed to determine whether release of the Plan would likely cause them substantial competitive harm. The Frazees contend that they expended considerable effort and cost in preparing the Plan. The Frazees explain that the information in the Plan is their individual and unique response to the Solicitation requirements. The Frazees also claim that disclosure of the Plan would enable a competitor to copy and improve the Plan and thus put the Frazees at a competitive disadvantage in subsequent bidding competitions. Their argument is without merit.
 
 
 20
 In its analysis, the district court considered the cost of acquiring the information in the Plan through other sources. Because the information contained in the Plan is freely or cheaply available from other sources, the district court determined that the Forest Service's disclosure of the Plan is unlikely to cause substantial competitive harm to the Frazees. We agree with the district court's reasoning.
 
 
 21
 The district court viewed in camera all the information contained in the Plan and determined that a large portion of the information, such as details regarding collection and handling of fees, operating season dates, rules, and law enforcement, is available to anyone using or visiting the facilities. Other information in the Plan, such as employee uniforms, maintenance equipment, and signs, is in public view daily. Furthermore, the district court noted that most of the general description of the campground management methods was taken directly from the Solicitation, or from the Guidebook for Establishing and Managing Campground Concession Operations, or is readily obtainable from other sources. Based on our independent review of the in camera information, we agree with the district court that because the information contained in the Plan is freely or cheaply available from various sources other than the Plan itself, the Plan cannot be considered protected confidential information. See GC Micro, 33 F.3d at 1112 n. 3 (finding that disclosure of agency information "freely or cheaply available from other sources" is unlikely to cause substantial competitive harm to submitter). The district court's decision was therefore not clearly erroneous.
 
 V.
 
 22
 The Frazees next argue that we should follow an expanded confidentiality test set out in Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871 (D.C.Cir.1992) (en banc). In this decision, the D.C. Circuit reaffirmed the two-prong National Parks confidentiality test, holding that the substantial competitive harm test was to be applied to information mandatorily provided to the government. The court then established a separate test to be applied to information voluntarily submitted to the government. The court concluded that information that is voluntarily provided to the Government is " 'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." Id. at 879.
 
 
 23
 As the Frazees point out, this circuit has not yet addressed the Critical Mass distinction between voluntary and mandatory information. But, we need not address that distinction here. The Critical Mass distinction between voluntary and mandatory information becomes relevant only when information is submitted to the government voluntarily. If the information is required by the government, then the substantial competitive harm prong of the National Parks confidentiality test still applies.
 
 
 24
 In the present case, the Frazees' submission of the Plan was not voluntary, but was required by the Forest Service. The Solicitation specified that the selected applicants would be required to present a final Plan which would then be attached to and be made a part of the Permit. It is this very Plan that was requested pursuant to FOIA and is the subject of this case. Because submission of this Plan was required by the Forest Service, the Critical Mass test for volunteered information is irrelevant. Thus, the only relevant question is whether disclosure of the Plan is likely to cause the Frazees substantial competitive harm. As explained above, the district court's finding that disclosure of the Plan is not likely to harm the Frazees was not clearly erroneous.
 
 VI.
 
 25
 Next, the Frazees argue that the Forest Service is bound by its promise to keep proposals confidential. The Frazees also argue that they relied on the Forest Service's 1993 "precedent," where the Forest Service denied their FOIA request for all proposals submitted during the 1993 bidding process and the Forest Service's internal evaluations of these proposals.
 
 
 26
 When the Forest Service stated "ALL INFORMATION DERIVED FROM THIS REVIEW IS CONFIDENTIAL" on the Solicitation and at the pre-application meetings, clearly it was referring to the applicants' proposals and not the final Plan attached to the Permit. The Forest Service promised to keep the proposals confidential and thus when the Frazees requested copies of proposals in 1993, the Forest Service properly denied their request.
 
 
 27
 The Forest Service's decision to deny the Frazees' 1993 FOIA request was consistent with its confidentiality statement and its later decision to release the Frazees' Plan. In 1993, the Frazees asked for far more and different types of material from the FOIA request at issue here. The Frazees wanted the proposals of all the applicants, both successful and unsuccessful, as well as the Forest Service's review and selection process evaluation notes. In contrast, the only document at issue here is the final, modified Plan attached to and made a part of the Permit, a public exhibit.
 
 
 28
 Although the Frazees' proposal submitted during the application process was confidential, once the Forest Service issued the Permit to the Frazees, their final Plan became a public record available through FOIA. The Permit specifically provides that the portion of the proposal consisting of the Plan is to be attached to and made a part of the Permit, a public document. The Frazees were present at two meetings at which the Forest Service announced that portions of documents would become public information and would be available through FOIA. Therefore, the Frazees were advised that the Plan, unlike their proposal, would become a public document.
 
 
 29
 The Frazees claim that attaching the Plan to the Permit, a public document, does not make the Plan public information when the original proposal remains confidential. This argument fails because a proposal and a final Plan are different documents. A proposal includes private financial information provided by the individual bidding for the Permit. A final Plan, in contrast, does not contain the same kind of private financial information. The Plan is merely a guideline for operation and maintenance. Although the financial information in the proposal may qualify as confidential information likely to cause competitive harm if disclosed, the operation and maintenance information in the Plan--the information at issue here--is not similarly sensitive. It is only after a proposal is selected that the amended operation and maintenance Plan in the selected proposal is attached to the Permit. Once the Frazees' proposal was chosen, only their Plan, and not their internal financial documents, became public information.
 
 VII.
 
 30
 The Frazees argue that the Plan is confidential information protected from release to the public by the Trade Secrets Act, 18 U.S.C. § 1905.[5] We have held, however, that the Trade Secrets Act and Exemption 4 of FOIA are coextensive. Pacific Architects, 906 F.2d at 1347. Furthermore, the Frazees give no reason as to why the Trade Secrets Act should, in their case, provide protection from disclosure broader than the protection provided by Exemption 4 of FOIA. Because we find that the Plan was not protected from disclosure under Exemption 4 of FOIA, we also find that the Plan is not exempt from disclosure under the Trade Secrets Act.
 
 VIII.
 
 31
 For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the Forest Service. As a result of our affirmance, the Frazees are not a prevailing party and thus are not entitled to attorneys' fees under 28 U.S.C. § 2412.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 The attorney represented Northwest Land Management, the recipient of the 1993 Permit but an unsuccessful applicant for the 1994 Permit. Northwest Land Management is the Frazees' direct competitor and a party to an administrative appeal contesting the award of the 1994 Permit to the Frazees
 
 
 [2]
 Pacific Northwest Region's Guidebook for Establishing and Managing Campground Concession Operations outlines the process by which the Forest Service solicits, assesses, and selects an applicant to manage Forest Service recreation facilities under the terms of a Special Use Permit
 
 
 [3]
 The two excepted items are confidential financial information generally not available to the public regarding the form of ownership and existence of encumbrances on equipment used by the Frazees at the campsites. The district court ordered that this information be redacted from the Plan prior to disclosure
 
 
 [4]
 Section 552(b)(4) provides in pertinent part:
 (b) This section [requiring disclosure of information] does not apply to matters that are--
 ....
 (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential....
 5 U.S.C. § 552(b)(4).
 
 
 [5]
 The Trade Secrets Act imposes criminal sanctions on government agents who disclose, in any way "not authorized by law," certain confidential information submitted to the government. 18 U.S.C. § 1905