JET INVESTMENT, INC., a Nevada
Corporation, Plaintiff–
Appellant,

v.

DEPARTMENT OF the ARMY, Director-
ate of Contracting, Fort Lewis, WA;
Small Business Administration; Con-
vention Marketing Service, Inc., an Ore-
gon Corporation, Defendants–Appellees.

No. 94–16497.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1995.

Decided May 23, 1996.

Dozie Ike Ezeife, Amamgbo & Ezeife, Oakland, California, for plaintiff-appellant.

Charles L. Green, Special Assistant United States Attorney, San Francisco, California, John H. Hemann, argued, Assistant United States Attorney, San Francisco, California; J. William Bennett, Portland, Oregon, for defendants-appellees.

Before BOOCHEVER and REINHARDT, Circuit Judges and KING,* District Judge.

REINHARDT, Circuit Judge:

Plaintiff, Jet Investments, Inc. ("Jet"), appeals the district court's denial of declaratory and injunctive relief and grant of summary judgment in favor of defendants. Jet contends that the Small Business Administration ("SBA") improperly determined that it was not a "Small Disadvantaged Business" under the Small Business Act Minority Small Business and Capital Ownership Development Program ("the 8(a) program").[1] Having self-certified as a Small Disadvantaged Business,[2] Jet submitted a bid for a contract with defendant Department of the Army Directorate of Contracting to provide lodging, meals, and transportation to armed forces personnel applicants of the Military Entrance Processing Station in Oakland, California. The bid solicitation was restricted to small businesses. Defendant Convention Marketing Service, Inc. protested the Department of the Army's restriction of bidding to small businesses.

Pending resolution of that protest, the Department of the Army invited three qualified bidders to tender bids for an interim contract. Jet won this bid and was awarded the interim contract.

The Department of the Army conducted a second, unrestricted bid solicitation. Jet submitted another bid in response to this solicitation and was again adjudged the apparent low bidder. Convention Marketing—the apparent second lowest bidder—and Specialized Contract Services, Inc.—the apparent third lowest bidder—challenged Jet's status as a disadvantaged business in protest letters to the Army Directorate of Contracting.[3] The Department of the Army contracting officer forwarded the protests to the Division of Program Certification and Eligibility ("DPCE") of the Office of Minority Small Business and Capital Ownership Development. The DPCE Director determined that Jet did not qualify for disadvantaged status because it did not satisfy the regulatory standards governing the participation of nondisadvantaged individuals in a Small Disadvantaged Business. Jet appealed the DPCE Director's determination to the Associate Administrator of the Minority Small Business and Capital Ownership Development Program. The Associate Administrator upheld the Director's finding that Jet did not qualify as a Small Disadvantaged Business. The principal basis for the Small Business Administration's determination was the role in the operation of the business allegedly played by the husband of its sole owner.

In light of the Small Business Administra-

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. The 8(a) program, which is codified in 15 U.S.C. § 637,

    is intended to be used exclusively for business development purposes to help small businesses owned and controlled by socially and economically disadvantaged individuals, economically disadvantaged Indian tribes, including Alaska Native Corporations, and economically Native Hawaiian Organizations to compete on an equal basis in the mainstream of the American economy.

    13 C.F.R. § 124.1.

2. The Army's solicitation for bids contained a provision that allowed for bids to be evaluated so as to accommodate a preference for Small Disadvantaged Businesses. Ten percent was added to all bids except those from disadvantaged businesses and other preferred entities.

3. As well as challenging Jet's disadvantaged status, Convention Marketing Services and Specialized Contract Services challenged Jet's size. The San Francisco Regional Office of the Small Business Administration determined that Jet was in fact a small business and that determination was affirmed by the Small Business Administration Office of Hearings and Appeals.

tion's determination,[4] the Army reevaluated the bids and awarded the contract to Convention Marketing. After it was notified that it had not been awarded the contract, Jet filed the present action in district court, alleging that the SBA's ruling denying it disadvantaged status was arbitrary and capricious. Jet sought a preliminary injunction and the defendants moved for summary judgment.

The district court denied Jet's motion and granted the defendants'. Jet appealed. We reverse the grant of summary judgment in favor of the defendants, direct that summary judgment be entered in favor of Jet, and remand for further proceedings on the question of the appropriate relief.

\* \* \* \* \* \*

Judicial review of the actions of the Small Business Administration is governed by the Administrative Procedure Act (APA). 5 U.S.C. §§ 701 *et seq.* The issue before us is whether the agency's determination is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); 5 U.S.C. § 706(2).[5] When a court examines the question whether an agency's determination survives that test, "[t]he focal point for judicial review is the administrative record already in existence, 'not some new record made initially in the reviewing court.'" *Asarco, Inc. v. United States Environmental Protection Agency,* 616 F.2d 1153, 1159 (9th Cir.1980) (quoting

*Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)).

\* \* \* \* \* \*

To qualify as a Small Disadvantaged Business, the business concern must be a bona fide small business that is at least 51% owned, managed and controlled by individuals who are socially and economically disadvantaged. 13 C.F.R. § 124.601–602(1). The defendants do not dispute the fact that Juliana Breece, a United States citizen of Asian Pacific descent,[6] qualifies as socially and economically disadvantaged under the 8(a) program.[7] It is also undisputed that Juliana Breece is the 100 percent owner, President, Secretary, Treasurer, sole stock holder and sole member of the Board of Directors of the newly formed Jet Investments. The contract at issue would have been Jet's first.

The applicable regulations clearly state that individuals who are not socially and economically disadvantaged "may be involved in the management of" and "may be stockholders, partners, officers, and/or directors of" the Small Disadvantaged Business. 13 C.F.R. § 124.104(c). It is undisputed that no nondisadvantaged individual is a stockholder, partner, officer or director of Jet and that Lee Breece—Juliana Breece's husband and Jet's "operations officer"—is a nondisadvantaged individual who is involved in the management of Jet. Section 124.104(c) prohibits Lee Breece, as a nondisadvantaged manager, from receiving excessive compensation, 13 C.F.R. § 124.104(c)(3), which has not been alleged by the defendants, and from exercising "actual control" or having "the power to

---

4. The Associate Administrator for Minority Small Business and Capital Ownership Development upheld the DPCE Director's decision. That decision constitutes the final decision of the Small Business Administration. 13 C.F.R. § 124.610(i).

   At the same time she denied Jet's appeal, the Associate Administrator noted that Jet had requested a hearing on the appeal. The Administrator correctly observed that the regulations governing the 8(a) program do not provide for hearings on appeals of disadvantaged status determinations.

5. For convenience, we use the term "arbitrary and capricious" when describing our conclusions that the agency violated the *Overton Park* standard, regardless of which specific part of the

standard is applicable in the particular circumstances.

6. Specifically, Juliana Breece is of Philippine descent. "Asian Pacific Americans (persons with origins from .... [t]he Philippines ... )" are presumptively "socially disadvantaged" for the purposes of determining disadvantaged status under the 8(a) program. 13 C.F.R. § 124.105(b).

7. Convention Marketing Services alleged in its protest letter to the Army contract officer that Juliana Breece was not economically disadvantaged. The Small Business Administration's determination makes no mention of this claim and the defendants have not raised this issue before this court.

control" the disadvantaged applicant or business, 13 C.F.R. § 124.104(c)(1). It is the "control" issue that lies at the heart of this dispute.

Nondisadvantaged individuals or entities "may be found to control or have the power to control" a disadvantaged business under the following circumstances:

(1) Nondisadvantaged individuals *control the voting Board of Directors* of the 8(a) concern, either directly through majority voting membership, or indirectly, if the by-laws allow nondisadvantaged individuals to block any action proposed by the disadvantaged individuals through negative control. For example, an equal number of disadvantaged and nondisadvantaged voting directors could create negative control.

(2) A nondisadvantaged individual, *as an officer or member of the Board of Directors of the 8(a) concern, or through stock ownership,* has the power to control day-to-day direction of the business affairs of the concern.

(3) The nondisadvantaged individual or entity provides critical financial or bonding support or licenses to the 8(a) concern which directly or indirectly allows the nondisadvantaged individual to gain control or direction of the 8(a) concern.

(4) A nondisadvantaged individual or entity exercises voting control of the Participant through a nominee(s).

(5) A nondisadvantaged individual or entity controls the corporation or the individual disadvantaged owners through loan arrangements.

(6) Other contractual relationships exist with nondisadvantaged individuals or entities, the terms of which would create control over the disadvantaged concern.

13 C.F.R. § 124.104(d)(1)-(6) (emphasis added). The aforementioned circumstances are illustrative but not exhaustive of the types of situations in which nondisadvantaged individuals or entities may be said to control or have the power to control the business seeking certification as a Small Disadvantaged Business. 13 C.F.R. § 124.104(d).

▌ The Small Business Administration denied Jet Small Disadvantaged Business status primarily because it determined that Lee Breece controls the company. The DPCE Director based his conclusion in part on the assertion that Juliana Breece told a Small Business Administration official that she had transferred sole authority to Lee Breece to make business decisions for the company, including all decisions related to the Army bid solicitation for which Jet had been designated the lowest bidder. There is nothing in the administrative record that supports the allegation that Juliana Breece ever made any such statement.[8]

The district court rejected Jet's argument that the Small Business Administration's determination was arbitrary and capricious because it was based on a statement found nowhere in the administrative record. The district court also rejected Jet's contention that the corporate records submitted to the Director definitively demonstrated that Juliana Breece was in "total and absolute control" of Jet. Instead, the district court affirmed the SBA's determination.

In discussing the summary judgment motion, the district court appeared to recognize that the SBA could *not* base its determination in whole or in part upon the alleged statement by Juliana Breece because there was nothing in the administrative record suggesting that any such statement had been made. Nevertheless, in its decision granting summary judgment, the court seemed to rely on its conclusion that Jet failed to present an affidavit or other evidence in response to the allegation made by the defendants in their summary judgment papers that the statement had indeed been made.

Jet was not, as the district court appeared to conclude, required to submit an affidavit or other evidence that the alleged statement by Juliana Breece was not made. The defendants conceded at oral argument and before the district court that there is no evidence in

---

8. On April 21, 1994, Darryl Hairston, former DPCE Director, submitted to the district court a certified copy of the administrative record before him at the time he determined Jet's eligibility for disadvantaged status. Thus, the complete administrative record is included in the district court clerk's record.

the administrative record that Juliana Breece ever told any SBA official that Lee Breece possessed sole decision making authority for Jet Investments. Therefore, at the time of summary judgment, Jet had no obligation to submit an affidavit to rebut an allegation for which there was no support in the administrative record, notwithstanding any facts or charges set forth in the defendants' moving papers.[9] To the extent that the district court granted judgment for the defendants because Jet failed to refute such an allegation, it erred.

■ The district court also erred in its conclusion that the administrative record contained ample evidence that Lee Breece controls or has the power to control Jet. Apart from relying on the undocumented alleged statements by Juliana Breece, the DPCE Director based his conclusion that Lee Breece exercises control over Jet almost entirely on the fact that Lee Breece was given the authority to obligate Jet to the lease involved. While the Director also referred cryptically to "the apparent trend of bestowing authority unto Mr. Breece to run the day-to-day affairs of the business," the administrative record contains no support for this statement, other than vague and conclusory allegations contained in the letter of the protesting bidders. There is nothing in the administrative record that suggests that the SBA ever contacted the letter-writers to obtain any facts or specific information regarding the general charge.

When weighed against the other evidence in the record—the corporate records demonstrating that Juliana Breece controlled Jet in every respect—the fact that Lee Breece was delegated the authority to obligate Jet to the lease agreement is insufficient to support a

finding that he controls or has the power to control as described in the regulations governing the 8(a) program. That Juliana Breece did not personally sign the lease is, of course, not evidence that she did not decide whether to enter into that lease. The president of a company could, as Juliana Breece contends is the case here, delegate the task of entering into lease agreements to one of her employees without conferring control over the affairs of the company to that employee.

According to the minutes of a meeting of Jet's Board of Directors held on August 10, 1993, which are contained in the administrative record, Juliana Breece, as the sole member of the Board of Directors, considered and resolved to adopt a proposal to enter into the lease with the Heritage Inn. Further, at the same meeting, Juliana Breece resolved that "the operations officer [Lee Breece] of this corporation be and hereby is authorized to execute said Lease in the name and on behalf of this corporation and in substantially the form approved at this meeting." The minutes were signed by Juliana Breece as the Chairman and Secretary.

Evidence that Lee Breece does not exercise control or have the power to control Jet is found in Jet's Articles of Incorporation, which are also part of the administrative record. The Articles of Incorporation were filed with the State of Nevada on January 8, 1992, and name Juliana Breece as the only member of the Board of Directors. The company's By-laws show Juliana Breece to be the only person who can call Special Meetings; designate the place for such a meeting; establish a quorum of shareholders; and elect directors. As the only member of the Board of Directors, Juliana Breece has

---

9. Jet argues that the SBA should have considered written statements, denying the allegation, that were sent by Juliana Breece to the regional SBA office in response to the protest of Jet's size, *see supra* note 3. Jet contends that the regional office should have forwarded the statements to the DPCE Director or that the information contained in the statements should have been considered when Jet appealed the disadvantaged status determination because Jet's appeal letter included the same information. Because we conclude that the agency's determination fails under the "arbitrary and capricious" standard of

review, we need not address what appears to be an argument by Jet that the agency's failure to consider the information at issue demonstrates that the Small Business Administration's factfinding procedures are inadequate. *See e.g. Pacific Architects and Engineers Inc. v. United States Department of State,* 906 F.2d 1345, 1348 (9th Cir.1990) (stating that the Supreme Court has interpreted section 706(2)(F) to justify de novo judicial review when "the action is adjudicatory in nature and the agency factfinding procedures are inadequate").

the power to manage the business affairs of the corporation; to call regular and special meetings of the board; establish a quorum of board members; remove directors with or without cause; elect or appoint officers; and remove officers. As President of Jet, Juliana Breece has the power to supervise and control all of the business and affairs of the corporation. As Treasurer, Juliana Breece has the power of charge, custody and responsibility for all funds and securities of the corporation. This evidence of Juliana Breece's control weighs heavily against the conclusion that Lee Breece exercises or has the potential to exercise control over Jet.

We reject the idea that simply because a wife delegates important responsibilities to her husband who works with her in the business she can be considered other than the true owner and authority figure of the enterprise. Any such argument is, to put it politely, anachronistic. Moreover, the argument is even less palatable here where the wife has extensive prior experience in the industry in which she now owns her own small company.[10] In sum, the record plainly refutes the SBA's arbitrary and capricious determination that Lee Breece controlled or had the power to control Jet.

■ Finally, we note that the SBA's determination was also based in part on the alternative theory that Jet's relationships with nondisadvantaged individuals and entities other than Lee Breece "give rise to the potential for indirect negative control." To the extent that the agency's determination was based on its alternative theory, it was equally arbitrary and capricious. The evidence and circumstances upon which the Director relied to conclude that these other nondisadvantaged individuals or entities had the potential to control Jet were of a strikingly different nature from the circumstances described in the regulations. See 13 C.F.R. § 124.104(d)(1)-(6) (describing circumstances

in which nondisadvantaged individuals or entities exercise control through particular corporate voting schemes or by financially controlling the disadvantaged applicant or the disadvantaged business through contracts or loan agreements).

The Director concluded that "other relationships appear to exist [between Jet and] other nondisadvantaged entities and individuals which give rise to the potential for indirect negative control" on the basis of the facts that (1) Jet's addresses were the addresses of a nondisadvantaged hotel from which it was leasing space and another nondisadvantaged business called "Easy Mail," (2) an employee of the hotel where Jet was leasing space answered at the phone number Jet had given as its number, and (3) income tax forms submitted by Juliana Breece showed that her salary had been paid by her current or former[11] employer and former business partner.

We need not decide whether "the potential for indirect negative control" would warrant disqualification in other circumstances, or whether factors which merely "appear" to exist would be sufficient for that purpose. Here, there is nothing surprising or inculpatory about any of the arrangements with nondisadvantaged concerns identified by the Director; nor do any of those arrangements in any way suggest the surrender by Juliana Breece of any type of control over the business. Rather, the record reveals the kind of innocuous relationships one would expect any new small business to establish in order to minimize start-up costs as it commences operations. Accordingly, the Director's suggestion that these relationships demonstrate that nondisadvantaged businesses or individuals could potentially control Jet by negative indirect means is also arbitrary and capricious.

## CONCLUSION

We conclude that the Small Business Administration acted arbitrarily and capricious-

---

10. On her resume, which is part of the administrative record, Juliana Breece states that she has "managed and audited hotels for six years." She names the Heritage Inn, Holiday Inn and Oxford Koala Hotel as places she has performed those services.

11. The SBA noted that Juliana Breece was either formerly or currently employed by Remesh Pitamber. The protesting bidders charged that Juliana Breece was employed by Pitamber at the time of their protests. In making its determination, the SBA did not rely on or base its decision on this allegation and the defendants do not argue that the issue is relevant to this appeal.

ly in determining that Jet did not qualify for disadvantaged status because Lee Breece exercises control over it or because other relationships appear to exist that give rise to a potential for indirect negative control. We reverse the grant of summary judgment in favor of the defendants and direct that judgment in favor of the plaintiff be granted.

According to counsel at oral argument, the contract at issue has already been performed and defendant Convention Marketing Services is presently performing under a one-year option to the original contract that will expire on September 30, 1996. In its complaint, Jet requested declaratory and injunctive relief and "such other orders and further relief as may be proper in the circumstances." The later phrase may include appropriate monetary relief should circumstances prohibit injunctive relief.[12] *Z Channel Ltd. v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (1991), *cert. denied*, 502 U.S. 1033, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992) (stating that relief in damages is not foreclosed by plaintiff's failure to ask for damages in prayer). We remand to the district court to determine the appropriate relief.

REVERSED AND REMANDED.

---

**12.** A claim for damages may be entertained in the district court, regardless of the amount sought, because the "sue and be sued" provision of the Small Business Act, 15 U.S.C. § 634(b)(1) is a basis for jurisdiction independent of the Tucker Act. *See In re Liberty Construction*, 9 F.3d 800, 802 (9th Cir.1993).