**LION RAISINS INC., Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant–Appellee.**

No. 02–16696.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2003.

Filed Jan. 15, 2004.

Brian C. Leighton, Clovis, CA, for the plaintiff-appellant.

Linda M. Anderson, Assistant United States Attorney, Fresno, CA, for the defendant-appellee.

Before TASHIMA, THOMAS, and SILVERMAN, Circuit Judges.

TASHIMA, Circuit Judge.

This appeal concerns the United States Department of Agriculture's ("USDA's") denial of three Freedom of Information Act ("FOIA") requests of appellant Lion Raisins ("Lion"). Lion, a large independent handler of California raisins, is the subject of a criminal investigation because the government suspects that Lion falsified documents related to USDA inspections of its raisins. In preparation of its defense, Lion submitted FOIA requests seeking documents related to USDA raisin inspections conducted at Lion's packing facility and the facilities of its competitors, and two internal reports related to the

USDA's investigation of Lion. USDA denied Lion's requests pursuant to the "trade secrets" and "law enforcement" exemptions of FOIA. *See* 5 U.S.C. § 552(b)(4), (7)(A). After exhausting its administrative appeals, Lion brought this action to compel production of the documents pursuant to 5 U.S.C. § 552(a)(4)(B). The district court granted summary judgment to USDA. On appeal, Lion contends that the district court misapplied both the "trade secrets" and "law enforcement" exemptions. Lion also objects to the district court's reliance on *in camera* review of the government's sealed declaration as the sole factual basis for its "law enforcement" decision. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

## BACKGROUND

The California raisin industry is highly competitive. At the time this action was commenced, raisin prices were at a 15–year low and the success or failure of contract bids hinged on price differentials of a fraction of a cent per pound. Lion is the largest independent handler of California raisins in the state. Like its competitors, Lion is governed by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§ 601–627, and a "marketing order" promulgated thereunder, 7 C.F.R. §§ 989.1–989.801, that regulate the sale of raisins. The marketing order requires that raisin handlers have their products inspected by USDA once when they are received from producers, and again before they are sold to the consumer. 7 C.F.R. §§ 989.58–989.59. When conducting the required inspections, USDA inspectors periodically take samples from handlers' processing lines and assess the quality of the raisins in various categories, including weight, color, size, sugar content, and moisture. *See* 7 C.F.R. § 989.159. The inspectors note their observations on "Line Check Sheets" and assign grades to the observed raisins. The original of the Line Check Sheet is retained by USDA and a carbonless copy is left with the handler.[1] Information from the Line Check Sheets is summarized on USDA "Inspection Certificates," which raisin handlers can send to their consumers as an assurance of quality.

On February 20, 1998, the USDA received an anonymous tip that Lion was falsifying its Inspection Certificates. Acting on that tip, Agricultural Marketing Services of USDA ("AMS") initiated an investigation. The AMS investigation revealed that, on at least three occasions between March and December of 1998, Lion representatives forged the signatures of USDA inspectors or recorded false moisture readings on Inspection Certificates. On at least one occasion, Lion allegedly altered the grade assigned to its raisins on an Inspection Certificate from "C" to "B." On May 26, 1999, AMS prepared a report of its findings. On October 19, 2000, the USDA Office of the Inspector General ("OIG") served and executed a search warrant at Lion's packing plant. In the course of that search, agents seized the Lion-retained copies of Line Check Sheets of inspections performed at Lion's packing plant between 1995 and 2000.[2] OIG prepared a report of its findings. Based on the AMS investigation and the fruits of the OIG raid, USDA suspected that Lion falsified the Lion-retained copies of Line Check Sheets in addition to Inspection Certificates.

---

1. For clarity, the "original" retained by USDA will be referred to as the "USDA-retained original," and the "copy" left with Lion will be referred to as the "Lion-retained copy."

2. USDA contends that it did not seize any Lion-retained copies of Line Check Sheets for the years 1995 and 2000, or for the months of January and February, 1998, and December, 1999.

On January 12, 2001, USDA suspended Lion from eligibility for government contracts and filed an administrative complaint seeking to "debar" further inspections of Lion's facilities. Lion successfully challenged USDA's suspension order in the district court, and later, in the Court of Federal Claims. The debarment complaint was still pending at the time this appeal was argued. Meanwhile, the United States Attorney for the Eastern District of California initiated a criminal investigation.

On August 20, 2001, Lion submitted FOIA requests seeking copies of all USDA-retained original Line Check Sheets for inspections at its packing plant from 1991 to the present. Although its FOIA request did not so specify, Lion made clear in its briefs and at oral argument that it sought copies of the USDA-retained originals of Line Check Sheets for inspections at its own plants, not the Lion-retained copies that were seized from Lion's packing plant.[3] Lion suspected that any discrepancies between the Lion-retained copies of the Line Check Sheets and the USDA-retained originals were the result of USDA's intentional or negligent alteration of the USDA-retained originals. In a separate request, submitted on August 21, 2000, Lion sought the reports prepared by AMS and OIG related to USDA's investigation of Lion.[4] Both of Lion's requests (for the check sheets and for the investigative reports) were denied pursuant to the "law enforcement" exemption to FOIA, on the basis that releasing the documents would interfere with an on-going criminal investigation. *See* 5 U.S.C. § 552(b)(7)(A).

In a third request, submitted on August 29, 2000, Lion sought copies of the USDA-retained originals of Line Check Sheets, from 1996 to the present, for six of its competitors in the California raisin packing industry: Sunmaid Raisins, National Raisin, Enoch Packing, Chooljian Bros., Del Rey Packing, and Victor Packing. Lion sought the Line Check Sheets of its competitors because it believed that USDA inspectors routinely committed fraud when filling out Line Check Sheets, and it wanted to compare the way its competitors' raisins were graded to the way its own raisins were graded. USDA withheld these Line Check Sheets pursuant to the "trade secrets" exemption of FOIA, on the basis that producing them would cause "substantial competitive harm" by allowing Lion to deduce the volume, market share, and marketing strategy of its main competitors. *See* 5 U.S.C. § 552(b)(4).

Lion administratively appealed the denials of each of its FOIA requests within USDA. Two of Lion's appeals were denied. The third appeal received no response.[5] Lion then brought this action. Both parties moved for summary judgment. In support of its "trade secrets" withholding, USDA submitted two declarations from David Trykowski, an AMS Senior Compliance Officer. Trykowski's declarations stated that Lion could use the information contained in its competitors' Line Check Sheets to undercut its competitors' bids for raisin contracts, and they discounted the

---

3. Pursuant to a court order in a separate case, USDA photocopied and returned most of the Lion-retained copies of Line Check Sheets it seized from Lion's packing plant.

4. A redacted version of the AMS report was provided to Lion pursuant to a court order in a separate case. Lion's FOIA request sought the unredacted report.

5. The papers relating to the third appeal were lost when the USDA mail room became infected with anthrax spores. USDA's failure to respond to Lion's third FOIA appeal within the statutory 20–day period had the legal effect of denying Lion's appeal and exhausting Lion's administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

possibility that confidential information from the Line Check sheets could be redacted to eliminate the competitive harm. In support of USDA's "law enforcement" claim, an assistant United States attorney filed a declaration under seal with the district court. Based on the information in the three declarations, including its *in camera* review of the sealed declaration, the district court granted summary judgment for USDA.

## STANDARD OF REVIEW

In reviewing summary judgment in a FOIA case, we employ a two-step test. The first step is to determine whether the district court had an adequate factual basis for its decision. *Doyle v. FBI*, 722 F.2d 554, 555 (9th Cir.1983); *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 742 (9th Cir.1979). Whether a particular set of documents gives the court an adequate factual basis for its decision is a question of law that the court reviews *de novo*. *See Wiener v. FBI*, 943 F.2d 972, 978 (9th Cir.1991); *Binion v. United States Dep't of Justice*, 695 F.2d 1189, 1193 (9th Cir.1983).

The second step is to review the district court's decision itself. We have reviewed district court determinations as to whether a FOIA exemption applies using both the "clearly erroneous" and *"de novo"* standards of review. *See TPS, Inc. v. United States Dep't of Def.*, 330 F.3d 1191, 1194 (9th Cir.2003) ("If an adequate factual basis exists, we variously use de novo review or clear error review."). Where the district court's decision turns mainly on its findings of fact, we apply the "clearly erroneous" standard. *See Assembly of Cal. v. United States Dep't of Commerce*, 968 F.2d 916, 919 (9th Cir.1992) ("[T]he case hinges on whether disclosure of the requested information would reveal anything about the agency's decisional process. This is a fact-based inquiry where

deference to the district court's finding is appropriate."); *Church of Scientology*, 611 F.2d at 743. Where the parties do not dispute that the district court had an adequate factual basis for its decision, and the decision turns on the district court's interpretation of the law, we review the district court's decision *de novo*. *See Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir.1996) (" 'Although any factual conclusions that place a document within a stated exemption of FOIA are reviewed under a clearly erroneous standard, the question of whether a document fits within one of FOIA's prescribed exemptions is one of law, upon which the district court is entitled to no deference.' ") (quoting *Ethyl Corp. v. United States EPA*, 25 F.3d 1241, 1246 (4th Cir.1994)).

The district court's application of the claimed FOIA exemptions in this case was grounded in its findings of fact. With respect to the "trade secrets" exemption, the district court determined that withholding was proper based on its factual finding that Lion could use the information in its competitors' Line Check Sheets to gain an unfair competitive advantage in the raisin market. *See* 5 U.S.C. § 552(b)(4). With respect to the "law enforcement" exemption, the district court found that withholding Lion's Line Check Sheets and the investigative reports was proper because revealing the information in the withheld documents could reasonably be expected to interfere with the government's criminal investigation. *See* 5 U.S.C. § 552(b)(7)(A). Accordingly, we review the district court's decisions for clear error. *See Assembly of Cal.*, 968 F.2d at 919. Under clear error review, we reverse only if we are "left with a definite and firm conviction that the district court has erred." *Frazee v. United States Forest Serv.*, 97 F.3d 367, 370 (9th Cir.1996) (quoting *Nat'l Wildlife Fed'n v. United*

*States Forest Serv.,* 861 F.2d 1114, 1116 (9th Cir.1988)).

## ANALYSIS

FOIA gives individuals a judicially-enforceable right of access to government agency documents. 5 U.S.C. § 552.[6] The Supreme Court has interpreted the disclosure provisions of FOIA broadly, noting that the act was animated by a "philosophy of full agency disclosure." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989); *see also Dep't of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) ("disclosure, not secrecy, is the dominant objective of the Act"). In order to prevent disclosure of a limited class of sensitive government documents, FOIA lists nine statutory exemptions. 5 U.S.C. § 552(b)(1)-(9). Unlike the disclosure provisions of FOIA, its statutory exemptions "must be narrowly construed." *John Doe Agency,* 493 U.S. at 152, 110 S.Ct. 471. Where the government withholds documents pursuant to one of the enumerated exemptions of FOIA, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B).

### A. The "Trade Secrets" Exemption

■■■ USDA withheld the Line Check Sheets of Lion's competitors pursuant to the "trade secrets" exemption. *See* 5 U.S.C. § 552(b)(4). The "trade secrets" exemption allows government agencies to withhold documents that contain "commercial or financial information obtained from a person and privileged or confidential." *Id.* Information is "confidential" for the purposes of the "trade secrets" exemption where disclosure of that information could cause "substantial harm to the competitive

position of the person from whom the information was obtained." *G.C. Micro Corp. v. Defense Logistics Agency,* 33 F.3d 1109, 1112–13 (9th Cir.1994) (citing *Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974)). The government need not show that releasing the documents would cause "actual competitive harm." *G.C. Micro,* 33 F.3d at 1113. Rather, the government need only show that there is (1) actual competition in the relevant market, and (2) a likelihood of substantial competitive injury if the information were released. *Id.*

■■■ We must first determine whether the district court had an adequate factual basis for its decision. Courts can rely solely on government affidavits so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim. *Church of Scientology,* 611 F.2d at 742 ("If the agency supplies a reasonably detailed affidavit describing the document and facts sufficient to establish an exemption, then the district court need look no further in determining whether an exemption applies."). District courts have discretion to order *in camera* inspection of the actual documents the government wishes to withhold. 5 U.S.C. § 552(a)(4)(B). *In camera* inspection of documents is disfavored, however, where the government sustains its burden of proof by way of its testimony or affidavits. *Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir.1987).

■■■ In support of its claim to the "trade secrets" exemption, USDA submitted blank Line Check Sheet forms and two

---

**6.** FOIA provides, *inter alia,* that:

[E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees

(if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3)(A).

declarations from Trykowski. Lion disputes Trykowski's expertise in the area of raisin marketing and competition and contends that his declaration consists of "utter legal conclusions." But according to his declaration, Trykowski's position as Senior Compliance Officer for AMS, a position that he has held for over eight years, has made him "very familiar" with the raisin marketing order that governs Lion, and put him in "almost daily contact" with raisin graders and supervisors. Trykowski's experience lends considerable weight to his testimony. More importantly, Trykowski's conclusions are supported by detailed and specific descriptions of each category of information included on the Line Check Sheets and the ways in which each category of information could be turned to Lion's competitive advantage. *See Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1227 (9th Cir.1991) (holding that affidavits that described documents withheld, the statutory exemptions claimed, and the specific reasons for the agency's withholding provided adequate factual basis for application of "trade secrets" exemption). Lion does not advocate *in camera* review of the withheld Line Check Sheets.[7] Indeed, nothing could have been gained by reviewing the withheld Line Check Sheets *in camera* because there is no dispute as to the type of information contained in the Line Check Sheets. *Cf. Harvey's Wagon Wheel, Inc. v. NLRB*, 550 F.2d 1139, 1143 (9th Cir.1976) (holding that *in camera* inspection is not required where no factual dispute exists as to the nature of the statements sought). Because Trykowski's declarations identify the documents sought and the exemptions claimed, and they specify the competitive harm that USDA fears would be caused by release of the requested documents, the district court

had an adequate factual basis to decide whether the "trade secrets" exemption applied.

Next we must decide whether the district court clearly erred in determining that Lion's competitors' Line Check Sheets fell within the "trade secrets" exemption to FOIA. The parties agree that there is actual competition in the relevant market. As Trykowski points out, prices for raisins are at a 15–year low and bids for raisin contracts can succeed or fail on margins of less than one cent per pound. The parties disagree, however, as to whether releasing the Line Check Sheets would cause "substantial competitive harm" to Lion's competitors.

▮ In *G.C. Micro*, the plaintiff sought information from a government agency regarding several large defense contractors' compliance with the minority contracting provisions of the Small Business Act.[8] 33 F.3d at 1111. The documents sought for each contractor included forms showing the total dollar value of all subcontracts and the percentage of those amounts that went to minority-owned businesses. *Id.* The documents did not show the subject matter of any of the contracts, nor did they show how many subcontracts each contractor had, how the subcontracts were distributed, or to whom they were awarded. *Id.* Nonetheless, the government argued that disclosing the documents would cause competitive harm because they would "provide competitors with a roadmap of the corporations' subcontracting plans and strategies." *Id.* at 1113. We held that the "trade secrets" exemption did not apply and compelled disclosure of the documents because "[t]he data [were] made up of too many fluctuating variables

---

7. USDA estimates that approximately 30,000 to 50,000 documents would be responsive to Lion's three FOIA requests. A considerable portion of those documents would consist of the Line Check Sheets of Lion's competitors.

8. *See* 15 U.S.C. § 644(g).

for competitors to gain any advantage...." *Id.* at 1115.

As in *G.C. Micro,* Lion contends that the information it seeks from the Line Check Sheets would not allow it to infer confidential information about its competitors because significant variables would be redacted.[9] USDA contends, however, that revealing even the limited information Lion seeks would allow Lion to infer critical information about its competitors' volume, market share, and marketing strategy. The district court gave credence to USDA's position and held that releasing the documents would cause substantial competitive harm.

We cannot conclude that the district court's decision was clearly erroneous. At minimum, producing the Line Check Sheets of Lion's competitors would reveal the type of raisins Lion's competitors produced at the time of the inspection at issue because the format for Line Check Sheets is distinct depending on the type of raisin inspected. Thus, unlike the documents sought in *G.C. Micro,* in which the subject matter of the government contracts was obscured, *see* 33 F.3d at 1114, the Line Check Sheets identify the exact type of raisins sold. Moreover, revealing the "sampling time" information from the Line Check Sheets would allow Lion to infer the volume of its competitors' raisin sales because raisin packers work irregular hours when they have a high volume of business.

With knowledge of the hours its competitors worked, Lion could deduce whether its competitors were producing a high volume of a particular type of raisin at the time of a given inspection. Finally, the "remarks" column of the Line Check Sheets typically includes information, such as container size and Inspection Certificate numbers, from which the identity of the packer being inspected could be inferred. Lion could use information from the Line Check Sheets to its advantage by cutting its prices for the types of raisins its competitors pack in large volumes in order to underbid them. *See id.* at 1115; *Gulf & W. Indus. v. United States,* 615 F.2d 527, 530 (D.C.Cir.1979) (holding that information that would permit competitors to estimate and undercut bids causes "substantial competitive harm"). Therefore, the district court's application of the "trade secrets" exemption to Lion's competitors' Line Check Sheets was not clearly erroneous.

## B. The "Law Enforcement" Exemption

 The district court determined that the USDA-retained originals of Lion's Line Check Sheets and the AMS and OIG investigative reports fell within the "law enforcement" exemption to FOIA. *See* 5 U.S.C. § 552(b)(7)(A). The "law enforcement" exemption allows the government to withhold "records or information compiled

---

9. Lion conceded in its FOIA requests that the name of the producer should be redacted. In its subsequent briefs to the district court, Lion further conceded that the buyer's name and information about the size and nature of the packaging should be redacted. Finally, in its briefs to this court, Lion abandoned its request for the inspector's name and the case codes. *See* Appellant's Opening Brief at 25 ("Lion could even care less about whether or not the inspector's name is redacted as well ... Lion does not care about the case code or the size and type of container, but simply the

bare analysis of the raisins."). Thus, on appeal, Lion seeks only information from the Line Check Sheets relating to the times and dates of the inspections and the "bare bone results" of the inspections. Because the question of whether these additional redactions would be sufficient to prevent competitive harm was raised for the first time on appeal, we do not reach the issue. We do not preclude the district court from reconsidering the issue based on these, or other, additional redactions.

for law enforcement purposes ... to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." *Id.* In order to withhold documents pursuant to the "law enforcement" exemption, USDA "must establish that it is a law enforcement agency, that the withheld documents were investigatory records compiled for law enforcement purposes, and that disclosure of those documents would interfere with pending enforcement proceedings." *Lewis,* 823 F.2d at 379. Information need not have been originally compiled for law enforcement purposes in order to qualify for the "law enforcement" exemption, so long as it was compiled for law enforcement purposes at the time the FOIA request was made. *John Doe Agency,* 493 U.S. at 155, 110 S.Ct. 471.

The sole evidence submitted in support of USDA's claim under the "law enforcement" exemption was a declaration filed under seal by an assistant United States attorney. After reviewing the sealed declaration *in camera,* the district court ruled in favor of USDA. The district court did not elucidate its reasoning; it stated only that "[b]ased on the information disclosed in the declaration filed under seal" the "law enforcement exemption was properly invoked in this case." USDA did not brief the "law enforcement" exemption issue on appeal, nor was it prepared to discuss it at oral argument, because its counsel had never seen the sealed document and did not know the reasons for withholding the documents.[10] Lion vehemently opposed the court's reliance on *in camera* review of the sealed declaration as the sole basis for its decision. Although Lion frames its opposition as a due process challenge, its

arguments are cognizable as an attack on the factual basis for the court's decision. *See Wiener,* 943 F.2d at 978–79.

 Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought. *Church of Scientology,* 611 F.2d at 742. Ordinarily, the government must submit detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption. *Wiener,* 943 F.2d at 977. This submission is commonly referred to as a *"Vaughn"* index. *See Vaughn v. Rosen,* 484 F.2d 820, 823–25 (D.C.Cir.1973). Because the court and the plaintiff do not have the opportunity to view the documents themselves, the submission must be "detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption." *Maricopa Audubon Soc'y v. United States Forest Serv.,* 108 F.3d 1089, 1092 (9th Cir.1997).

Under certain limited circumstances, we have endorsed the use of *in camera* review of government affidavits as the basis for FOIA decisions. In *Doyle,* the plaintiff requested all FBI documents that pertained to him, but the FBI withheld the documents pursuant to several FOIA exemptions. 722 F.2d at 555. The district court ordered the FBI to submit "public affidavits justifying, itemizing, and indexing the withheld documents." *Id.* Upon reviewing the documents, the district court determined that the submitted affidavits were too vague. The FBI then submitted more detailed affidavits for *in camera* review. *Id.* Based on its *in camera* review of the new affidavits, the district court

---

10. We find it perplexing that the government would choose to assign counsel to defend its position on appeal (both in its brief and at oral argument) who is totally unfamiliar with

(and, presumably, denied access to) the facts upon which the government bases its claim to the law enforcement exemption.

granted summary judgment for the FBI. *Id.* We affirmed, holding that *in camera* review is justified where "the government's public description of a document and the reasons for exemption may reveal the very information that the government claims is exempt from disclosure." *Id.* at 556. We noted, however, that a district court may rely solely on *ex parte* affidavits "only in the exceptional case" and only after "the government has submitted as detailed public affidavits and testimony as possible." *Id.*

Likewise, in *Wiener*, the FBI submitted affidavits supporting its withholding of documents pursuant to various FOIA exemptions but the affidavits justified withholding only in general terms. 943 F.2d at 977. The district court ordered that a "*Vaughn* index" be composed, but that it be submitted for *in camera* review. *Id.* Pursuant to the court's order, the FBI submitted two additional affidavits and copies of the documents withheld. *Id.* Based on the materials submitted for *in camera* review the district court granted summary judgment for the FBI. *Id.* We reversed, holding that the court lacked an adequate factual basis for its decision because it failed to require that the FBI submit more detailed information in the form of public affidavits before resorting to *in camera* review. *Id.* at 979. We reasoned that the district court was deprived of the benefit of "informed advocacy" to draw its attention to the weaknesses in the withholding agency's arguments. Without notice of the facts and arguments supporting the government's position, the plaintiff had "little or no opportunity to argue for release of particular documents." *Id.* Therefore, as in *Doyle*, we held that resort to *in camera* review is appropriate only after the government has submitted as much detail in the form of public affidavits and testimony as possible. *Id.* at 979.

■ In this case, USDA submitted no public affidavits justifying the application of the § 552(b)(7)(A) exemption to either the Line Check Sheets or the investigative reports. Rather, the United States Attorney submitted its declaration to the court directly, under seal, *in lieu* of a public affidavit. USDA cites four cases in support of its approach, but none supports its position. *Ray v. Turner*, 587 F.2d 1187 (D.C.Cir.1978), deals only with the presumption of validity that applies when the government withholds documents under the "national security" exemption; it has no significance to this case. *Id.* at 1195. *Murphy v. FBI*, 490 F.Supp. 1138 (D.D.C. 1980), permitted the use of *in camera* affidavits in order to *supplement* prior public affidavits that were too general. *Id.* at 1141. *John Doe Agency* mentioned the district court's use of *in camera* materials, but it does not condone the use of *in camera* affidavits as the sole factual basis for a district court's decision. 493 U.S. at 149–50, 110 S.Ct. 471. *Lewis* concerned *in camera* inspection of the withheld documents themselves, not the government affidavit in support of withholding. 823 F.2d at 378–79.

None of the cases cited by the government justifies the district court's reliance on *in camera* review of a sealed declaration *as a substitute for* docketed public declarations, and we decline to endorse the approach here. Requiring as detailed public disclosure as possible of the government's reasons for withholding documents under a FOIA exemption is necessary to restore, to the extent possible, a traditional adversarial proceeding by giving the party seeking the documents a meaningful opportunity to oppose the government's claim of exemption. *Wiener*, 943 F.2d at 979. The district court's reliance on *in camera* review as a substitute for public affidavits deprived both the district court and this court of the informed advocacy upon which the fairness of adversary pro-

ceedings depends.[11] Because the district court failed to require that the government submit as much information as possible in the form of public declarations before relying on *in camera* review, it lacked an adequate factual basis for its decision.

We do not imply that the government must disclose facts that would undermine the very purpose of its withholding.[12] *See Lewis*, 823 F.2d at 378 (the government "need not specify its objections [to disclosure] in such detail as to compromise the secrecy of the information") (alterations in the original). Nor do we suggest that *in camera* review of materials in support of the government's claim to a FOIA exemption is never appropriate. We hold only that the district court must require the government to justify FOIA withholdings in as much detail as possible on the public record before resorting to *in camera* review. *See Doyle*, 722 F.2d at 556.

### 1. *The Investigative Reports*

■ With respect to the investigative reports prepared by AMS and OIG, we remand to the district court with instructions to require submission of detailed public declarations, testimony, or other material in support of the "law enforcement" exemption. Because Lion requested specific documents, and the USDA identified the exemptions under which it withheld each document, the USDA need only explain, publicly and in detail, how releasing each of the withheld documents would interfere with the government's ongoing criminal investigation. *See, e.g., Lewis*, 823 F.2d at 379.[13] The submission must provide as much factual support for USDA's position as possible without jeopardizing the government's legitimate law enforcement interest in withholding the documents, and it must be "detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption." *Maricopa Audubon Soc'y*, 108 F.3d at 1092.

### 2. *Lion's Line Check Sheets*

■ With respect to the withholding of the USDA-retained originals of Lion's Line Check Sheets, no remand is necessary. We have reviewed the sealed declaration and we find that nothing therein justifies the application of the "law en-

---

**11.** As noted in footnote 10, *supra*, government counsel was also totally unprepared to assist this court with any "informed advocacy" on the law enforcement exemption.

**12.** It is not clear, however, how USDA could sincerely argue that disclosing the reasons that justify its "law enforcement" withholding would undermine the government's criminal investigation in light of counsel's admission that USDA does not know what reasons justify the invocation of the law enforcement exemption.

**13.** In *Lewis,* the government submitted detailed declarations explaining why the identification and release of certain documents would interfere with its ongoing criminal investigation. *Id.* One of the affidavits explained that:

> Disclosure of the documents ... would interfere with the current Service investiga-

tion of the plaintiff by prematurely revealing the evidence developed against the plaintiff; the reliance placed by the government on that evidence; the names of witnesses and potential witnesses; the scope and limits of the investigation; the identities of third parties contacted; the specific transactions· being investigated; the strengths and weaknesses of the government's case; and potential impeachment material. In addition, disclosure could aid plaintiff in tampering with potential evidence and witnesses, or otherwise frustrating the government's ability to present its best case in court.

*Id.* at 379 n. 5 (alteration in the original). We held that the public affidavit gave the plaintiff a fair opportunity to respond to the government's arguments in support of the "law enforcement" exemption and provided an adequate factual basis for the court's decision. *Id.* at 379.

forcement" exemption. If, as USDA contends, the USDA-retained originals of the Line Check Sheets are identical to the Lion-retained copies it left at Lion's packing plant, then no harm to the government's criminal investigation could possibly result from producing copies of the USDA-retained originals. Because Lion already has copies of the documents it seeks from USDA, USDA cannot argue that revealing the information would allow Lion premature access to the evidence upon which it intends to rely at trial. *See Dow Jones Co. v. FERC*, 219 F.R.D. 167, 173–74 (C.D.Cal.2003) (government's claim to "law enforcement" exemption for document related to its criminal investigation failed where it had previously disclosed the document to the target of the investigation). Likewise, there is no possibility that Lion could tamper with or falsify the authentic USDA-retained originals of Lion's Line Check Sheets because Lion seeks only copies of the USDA-retained originals. USDA would continue to retain the original version of the USDA-retained originals. The government suggests that releasing Lion's Line Check Sheets would give Lion an opportunity to forge or falsify those copies in an attempt to cast doubt on the authenticity of the USDA-retained originals. Such a speculative and far-fetched concern, which appears not to implicate any sources, techniques, methods, or other confidential law enforcement concern, is not a legitimate basis on which to invoke the law enforcement exemption. Were we to take it seriously, the government's argument would justify withholding of virtually *any* document by *any* government agency on the ground that the recipient might tamper with the disclosed copy. We thus conclude that the district court clearly erred in applying the "law enforcement" exemption to the USDA-retained originals of Lion's Line Check Sheets.

**CONCLUSION**

We affirm summary judgment for USDA with respect to Lion's request for copies of its competitors' Line Check Sheets. We reverse summary judgment for USDA with respect to Lion's request for copies of the AMS and OIG investigative reports. On remand, the district court should require USDA to submit detailed public declarations, testimony, or other material in support of its invocation of the "law enforcement" exemption and afford Lion an opportunity to advocate for the release of the reports. With respect to Lion's request for copies of the USDA-retained originals of its own Line Check Sheets, we reverse summary judgment for USDA, grant summary judgment for Lion, and order that the documents be produced forthwith. Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.**